IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SAQUAN S. MUSGROVE, )
 )
       Plaintiff, )
 )
v. ) 1:19CV164
 )
CORRECTIONAL OFFICER MOORE, )
et al., )
 )
       Defendants. )

**ORDER, MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

      This matter comes before the Court upon Plaintiff Saquan S. Musgrove's Motion for Default Judgment. (Docket Entry 18.) Also before the Court is Defendants Ashley Jones, Kisha Moore, and Alkereen Whichard's Motion to Set Aside Entry of Default. (Docket Entry 22.) Plaintiff has also filed a Motion to Amend the Complaint. (Docket Entry 24.) These matters are ripe for disposition. For the following reasons, the undersigned will allow Plaintiff an opportunity to amend his Complaint, recommend that Defendants' motion to set aside entry of default be granted, and recommend that Plaintiff's motion for default judgment be denied.

**I. BACKGROUND**

      Plaintiff, a pro se prisoner, filed this action against Defendants alleging use of excessive force stemming from an incident at the Scotland Correctional Institution in February 2016. (*See generally* Complaint, Docket Entry 1.) Since the issuance of the summonses, the U.S. Marshal filed Returns indicating that Defendants had been served. (*See* Docket Entries 11,

14.) On March 16, 2020, Plaintiff filed a document which the Court construed as a motion for entry of default against Defendants. (Docket Entry 16.) Thereafter, the Court, having concluded that said Defendants were served by the U.S. Marshal's Office and neither had filed an answer nor responsive pleading, entered default against Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Docket Entry 17.) Plaintiff then moved for default judgment against Defendants. (Docket Entry 18.) In response, Defendants filed a motion to set aside entry of default. (Docket Entry 22.)

In support of their motion, Defendants submitted the declaration of Alan McInnes ("McInnes"), an attorney with the North Carolina Department of Justice, Public Safety Section ("NC DOJ"). (Alan McInnes Declaration, Docket Entry 23-1.) McInnes indicates that he has been employed with the NC DOJ since May 2018 and was assigned to represent Defendants on September 27, 2019. (*Id.* ¶¶ 2-3.) In accordance with NC DOJ policies and procedures, McInnes requested that the paralegal assigned to this case send Defendants a letter notifying them of their right to representation by the department. (*Id.* ¶ 4.) The last page of the letter is referred to as the "Endorsement" page, which is where Defendants can indicate that they wish to be represented by the NC DOJ. (*Id.*; *see also* Ex. A to McInnes Decl., Docket Entry 23-1 at 21.) By October 15, 2019, McInnes's office had received signed Endorsements from Defendants requesting representation regarding this matter. (McInnes Decl. ¶ 5; *see also* Ex. B to McInnes Decl., Docket Entry 23-1 at 22-24.) At that time, Defendants had taken the required steps to be represented by the NC DOJ. (McInnes Decl. ¶ 5.)

Prior to undertaking representation of Defendants, McInnes was then required to recommend to the Deputy Attorney General that the NC DOJ should represent Defendants

2

and for the Deputy Attorney General to send a letter to Defendants confirming that the NC DOJ would be representing them. (*Id.* ¶ 6.) After the confirming letter had been sent, McInnes's Section would then be able to represent Defendants. (*Id.*) As further explained below, the recommendation was not made, the letter confirming representation was not sent, and the undertaking of representation did not occur in the fall of 2019. (*Id.* ¶ 7.)

McInnes states that from mid-September 2019 through mid-October 2019, it was an extremely busy work period for him, to include being assigned approximately 50 cases, handling three contested cases in the Office of Administrative Hearings on statutorily short deadlines, dealing with two major discovery productions, and preparing trial and summary judgment materials. (*Id.* ¶¶ 7(a)-(d).) He then went on emergency leave for three months beginning October 22, 2019.[1] (*Id.* ¶¶ 8-9.) During that period, McInnes's supervisor assigned his cases to other attorneys for monitoring and attention as necessary. (*Id.* ¶ 9.) McInnes is informed and believes that his supervisor accomplished this task by contacting the paralegals assigned to his cases to create a list of his cases and upcoming deadlines. (*Id.*) The paralegal assigned to the instant matter apparently left this case off the list provided to McInnes's supervisor and it was never assigned to another attorney to monitor. (*Id.*)

Upon returning from emergency leave, McInnes's first priority was to determine the status and deadlines for his cases by conferring with other counsel assigned to his cases. (*Id.* ¶ 10.) He also reviewed the case management system, "Infoshare," to obtain a list of cases in which he was assigned. (*Id.* ¶ 11.) When McInnes did a January 2020 update using the

---

[1] McInnes's declaration inadvertently indicates October "2020" rather than October 2019.

3

Infoshare system, the pending matter did not appear. (*Id.* ¶¶ 11-14; *see also* Ex. C to McInnes Decl., Docket Entry 23-1 at 25-28.)

Later, Defendants received the Notice of Hearing (the "Notice") scheduling the evidentiary hearing[2] on Plaintiff's motion for default judgment and forwarded it to their supervisors. (McInnes Decl. ¶ 15.) Eventually, in late August 2020, the Notice was received in McInnes's Section. (*Id.*) At that time, it was discovered that the paralegal assigned to this case had not input this case into Infoshare, and as a result, it did not appear on McInnes's January 2020 list. (*Id.* ¶ 14.)

Since McInnes received the Notice, he has been working diligently including investigating the background, interviewing defendants, researching caselaw, preparing his declaration, and helping to prepare the memorandum in support of the motion to set aside the entry of default. (*Id.* ¶ 17.) He has also reviewed the underlying merits of the case and, based on his experience and the facts of this case, McInnes believes Defendants have a meritorious defense. (*Id.* ¶ 18.) Although Plaintiff complains of injuries as a result of Defendants' alleged excessive force in using keys to beat the back of Plaintiff's hands, McInnes avers that there is no incident report relating to Plaintiff on the day of the alleged incident, there are no medical records relating to Plaintiff on that day, and Defendants deny that any such event occurred. (*Id.* ¶ 19.) These facts, among others, in McInnes's opinion, gives rise to a meritorious defense. (*Id.*)

---

[2] This hearing was cancelled pending a ruling on Defendants' motion to set aside entry of default. (*See* Text Order dated 9/14/2020.)

## II. DISCUSSION

### A. <u>Defendants' Motion to Set Aside Entry of Default</u>

Pursuant to the Federal Rules of Civil Procedure, "[t]he Court may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c). The Fourth Circuit has held that certain factors must be considered to determine if there is "good cause" to set aside an entry of default: (1) whether the moving party has a meritorious defense, (2) whether it acts with reasonable promptness, (3) the personal responsibility of the defaulting party, (4) the prejudice to the party, (5) whether there is a history of dilatory action, and (6) the availability of sanctions less drastic. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). "Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson v. Hodge,* 411 F.2d 123, 130 (4th Cir. 1969) (citation omitted). Resolution of motions made under Rules 55(c) "is a matter which lies largely within the discretion of the trial judge[.]" *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967).

Considering the factors in *Payne*, the Court concludes that Defendants' motion should be granted. The Court first considers whether Defendants have raised a meritorious defense. *Payne*, 439 F.3d at 205. Defendants contend that they have a meritorious defense as there are several markers outlined in McInnes's declaration indicating that the alleged excessive force incident never occurred, or at least not as alleged. (*See* McInnes Decl. ¶ 19.) "[T]he Eighth Amendment forbids 'the unnecessary and wanton infliction of pain' " on prisoners by prison officials. *Hill v. Crum,* 727 F.3d 312, 317 (4th Cir.2013) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). In excessive force claims, the core inquiry "is whether force was applied in a

good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Rios v. Veale*, 648 F. App'x 369, 371 (4th Cir. 2016) (internal quotations and citation omitted). It is the nature of the force, not the extent of the injury, that is the main inquiry here. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.") Here, McInnes's declaration avers that no incident report exists of the alleged February 2016 incident, nor are there any correlating medical reports. (McInnes Decl. ¶ 19.) Furthermore, Defendants deny that any such event ever occurred. (*Id.*) As such, Defendants have presented a meritorious defense at this juncture. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party.").

As to the second and third factors, both weigh in favor of Defendants. Defendants acted with reasonable promptness forwarding the Notice to their chain of command which was later received in McInnes's office. (McInnes Decl. ¶ 15.) McInnes then immediately began investigating the matter and began preparing for the filing of the motion to set aside the entry of default and supporting materials. (*Id.* ¶ 17.) Additionally, McInnes's declaration demonstrates Defendants themselves took the actions they needed to take to be represented and it was McInnes and his office that were responsible for the delay in responding.

The remaining factors also weigh in favor of Defendants. Considering the fourth factor, Plaintiff would not be prejudiced by setting aside entry of default in this action. *Payne*,

6

439 F.3d at 205. Plaintiff has not cited any particular prejudicial effect, nor does the Court find that this matter would be adversely impacted by setting aside default. No discovery has been taken in this matter. With respect to the fifth and sixth factors, there is no history of dilatory conduct on the part of Defendants, and sanctions are not warranted given the circumstances of Defendants' tardiness. Thus, for good cause shown, and because the relevant factors weigh in favor of setting aside entry of default, Defendants' motion should be granted.

### B. Plaintiff's Motion for Default Judgment

Plaintiff has filed a motion seeking default judgment against Defendants, and monetary relief as set forth in the Complaint. (Docket Entry 18.) Because the Court recommends that entry of default against Defendants should be set aside in this matter, Plaintiff's motion should be denied.

### C. Plaintiff's Motion to Amend Complaint

Plaintiff moves to amend his Complaint. (Docket Entry 24.) It appears that Plaintiff is seeking to amend allegations related to Defendant Whichard. (*See id.* at 1.) Based upon Plaintiff's document submitted days after his motion to amend (*see* Docket Entry 25), Plaintiff would like to add some allegations surrounding the lack of records surrounding his injury and his delayed treatment.[3] Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once, as a matter of course . . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Defendants

---

[3] To the extent this document seeks appointment of counsel, his request is denied for reasons previously stated. (*See* Text Order dated 10/1/2019.)

7

have neither answered Plaintiff's original pleadings in this matter nor opposed said motion. The Court finds that Plaintiff should be permitted to amend his pleadings in this matter. However, Plaintiff will be required to file an amended Complaint setting forth all of his allegations solely against Defendants Ashley Jones, Kisha Moore, and Alkereen Whichard related to the February 2016 incident at the Scotland Correctional Institution.

### III. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend the Complaint (Dock Entry 24) be **GRANTED** to the extent Plaintiff shall have up to and including January 8, 2021 to file an Amended Complaint. To assist Plaintiff, the Clerk shall send Plaintiff a blank § 1983 prisoner complaint form. Plaintiff shall entitle said form, "Amended Complaint," and said document shall set forth all allegations solely against Defendants Ashley Jones, Kisha Moore, and Alkereen Whichard related to the February 2016 incident at the Scotland Correctional Institution.

**IT IS RECOMMENDED** that Defendants' Motion to Set Aside Entry of Default (Docket Entry 22) be **GRANTED** and that the Court's Entry of Default (Docket Entry 17) be set aside.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Default Judgment (Docket Entry 18) be **DENIED**.

_____
Joe L. Webster
United States Magistrate Judge

December 10, 2020
Durham, North Carolina